IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JEFFREY W. HERRMANN AND )
MINA GEROWIN HERRMANN, )
                                )
         **Plaintiffs,** )
                                  )     **No. 14-941 T**
       **v.** )
                                  )     **(Judge Charles F. Lettow)**
UNITED STATES OF AMERICA, )
                                  )
        **Defendant.** )
_____ )

## PLAINTIFFS MOTION TO COMPEL DISCOVERY

*Counsel of Record:*
Nathan E. Clukey
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
Email: nclukey@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann
and Mina Gerowin Herrmann*

*Of Counsel:*
Ariana Wallizada
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
Email:  awallizada@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann
and Mina Gerowin Herrmann*

*Of Counsel:*
Abraham N.M. Shashy, Jr.
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
Email:  hshashy@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann
and Mina Gerowin Herrmann*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INDEX TO APPENDIX ..................................................................................... vi

1.  Introduction ........................................................................................... 1

2.  The IRS's *Touhy* Regulations cannot be used to gain an unfair advantage ....................... 2

3.  *De novo* review does not bar the discovery of relevant evidence ....................................... 8

4.  Deposition of Agent Scott ............................................................................ 12

5.  First Request for the Production of Documents ............................................................. 18

CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
   186 F.R.D. 66 (D.D.C. 1998)..............................................................................4, 5

*Beresford v. United States*,
   123 F.R.D. 232 (E.D. Mich. 1988) ..........................................................................11

*Big Ernie's Inc. v. United States*,
   104 A.F.T.R.2d (RIA) 2009-6218 (E.D. Va. 2009)..................................................9

*Cabana v. Forcier*,
   200 F.R.D. 9 (D. Mass. 2001)....................................................................................18

*Cook v. United States*,
   46 Fed. Cl. 110 (Fed. Cl. 2000) (J. Allegra) ..........................................8, 9, 10, 19

*D'Angelo v. United States*,
   2009-1 U.S. Tax. Cas. (CCH) P 50,273, 103 A.F.T.R.2d (RIA) 2009-1296
   (S.D. Fla. 2009)..............................................................................................................10

*Dixon v. Shinseki*,
   741 F.3d 1367 (Fed. Cir. 2014)............................................................................5, 7

*Galarza v. Szalczyk*,
   No. 10-6815, 2011 WL 1045119 (E.D. Pa. March 21, 2011)...................................5

*Gulf Group General Enterprises Co. v. United States*,
   98 Fed. Cl. 639 (Fed. Cl. 2011) .....................................................................1, 3, 4, 6

*Hickman v. Taylor*,
   329 U.S. 495 (1947).....................................................................................................8

*Hudspeth v. Commissioner*,
   914 F.2d 1207 (9th Cir. 1990) ............................................................................9, 10

*Jade Trading, LLC v. United States*,
   65 Fed. Cl. 487 (Fed. Cl. 2005) ........................................................................10, 18

*McElya v. Sterling Medical, Inc.*,
   129 F.R.D. 510 (W.D. Tenn. 1990) .............................................................................7

*NetJets Large Aircraft, Inc. v. United States*,
  114 A.F.T.R.2d 5173, 2014 WL 3459645 (S.D. Ohio July 11, 2014)............................5, 9, 10

*Nevada Partners Fund, LLC v. United States*,
  No. 06-379, 2008 U.S. Dist. LEXIS 47853, 2008 WL 2484198 (S.D. Miss.
  May 12, 2008)................................................................................................................10

*Resource Investments, Inc. v. United States*,
  93 Fed.Cl. 373 (Fed. Cl. 2010) ...............................................................................3, 4, 6, 8

*Rimmer v. Holder*,
  700 F.3d 246 (6th Cir. 2012) ...............................................................................................4

*Romero v. United States*,
  153 F.R.D. 649 (D.Colo. 1994) ...........................................................................................6

*Simons-Eastern Co. v. United States*,
  55 F.R.D. 88 (N.D. Ga. 1972)............................................................................................11

*State of La. v. Sparks*,
  978 F.2d 226 (5th Cir. 1992) ...............................................................................................4

*Timken Roller Bearing Co. v. United States*,
  38 F.R.D. 57 (N.D. Ohio 1964) .....................................................................................11, 12

*United States ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951)..................................................................................2, 3, 4, 5, 6, 7, 8

*United States v. Abel*,
  469 U.S. 45 (1984)............................................................................................................17

*United States v. Cathcart*,
  103 A.F.T.R.2d (RIA) 1036 (N.D. Cal. 2009)......................................................................10

*United States v. Janis*,
  428 U.S. 433 (1976)............................................................................................................9

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1958)............................................................................................................5

*United States v. Reynolds*,
  345 U.S. 1 (1953)...........................................................................................................2, 4

*United States v. Rohner*,
  116 A.F.T.R.2d (RIA) 7005 (6th Cir. 2015).....................................................................9, 10

**Statutes**

5 U.S.C. § 301 .................................................................................................................4, 8

iv

5 U.S.C. § 501 .................................................................................................................6

IRC section 6225 ......................................................................................................20, 21

IRC section 6230(a)(2) ............................................................................................20, 21


**Other Authorities**

26A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and
    Procedure: Evidence* § 5682 ....................................................................................3

*The De Novo Doctrine: Irrelevant to Relevancy in Civil Tax Litigation*, 14 Fla.
    Tax Rev. 115 (2013) ................................................................................................9

H.R.Rep. No. 85-1461 (1958) .........................................................................................3

*reprinted in* 1958 U.S.C.C.A.N. 3352 ...........................................................................3

Request 1 .......................................................................................................................19

Request 11 .....................................................................................................................21

Request 13 .....................................................................................................................22

Request 14 .....................................................................................................................22

Request 5 .......................................................................................................................19

Request 6 .......................................................................................................................20

Request 8 .......................................................................................................................20

Rule 26(b)(1)....................................................................................................9, 10, 12

Treas. Reg. § 301.9000-3(a) ...........................................................................................7

Treas. Reg. § 301.9000-5 ................................................................................................7

Treas. Reg. § 301.9000-5(a) ...........................................................................................7

Treas. Reg. § 301.9000-6, Example (6) ..........................................................................7

Treasury Regulations §§ 301.9000-1 to -7 .................................................................1, 2

8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 (3d ed. 2010)..........18

## <u>INDEX TO APPENDIX</u>

**Page**

Exhibit 1 ................................................................................................................. 1

Exhibit 2 ................................................................................................................. 3

Exhibit 3 ............................................................................................................... 14

Exhibit 4 ............................................................................................................... 40

Plaintiffs Jeffrey Herrmann and Mina Gerowin Herrmann respectfully submit this motion to compel the deposition of IRS Revenue Agent Joseph Scott ("Agent Scott") and for the production of documents.

**1. Introduction**

Over four months ago, on December 4, 2015, plaintiffs requested to take the deposition of Agent Scott and asked defendant to provide proposed dates for it.  Defendant refused to allow Agent Scott to be deposed unless plaintiffs would agree to provide a list of deposition topics in advance, something not required by this Court's Rules or the Federal Rules of Civil Procedure. Defendant claimed that it needed such a list to obtain a "testimony authorization" from the IRS, and insisted that Agent Scott would not testify without such an authorization, citing *United States ex rel. Touhy v. Ragen* and Treasury Regulations §§ 301.9000-1 to -7 (the "IRS's *Touhy* Regulations").  In the spirit of cooperation, plaintiffs ultimately provided defendant with a list of five deposition topics (identified below) to enable defendant to obtain the "testimony authorization" for Agent Scott.  Once in receipt of the list of deposition topics, defendant summarily rejected four of the five topics in their entirety, and said it would only seek an authorization for a portion of one topic.  Defendant represented that Agent Scott would not testify about anything else.  Yesterday, defendant provided its own "final" list of narrowly circumscribed deposition topics for Agent Scott.  *See* **Ex. 1**.  For the reasons described below, defendant has no lawful basis to limit Agent Scott's deposition in that manner.

The government, of course, is subject to the same discovery obligations as any other litigant.  *See Gulf Group General Enterprises Co. v. United States*, 98 Fed. Cl. 639, 646 (Fed. Cl.

2011).[1]  Like any other litigant, it may not interpose unreasonable hurdles to discovery or otherwise stonewall discovery.  The government has already deposed plaintiff Mina Gerowin Herrmann, has noticed and scheduled two more depositions, and is currently seeking yet two additional depositions.  Discovery in the federal courts is not a one-way street.  Because the government lacks a legitimate basis to prevent the deposition of Agent Scott from proceeding, plaintiffs respectfully request that the Court grant plaintiffs' motion to compel.

In addition, plaintiffs served on defendant a First Set of Requests for the Production of Documents ("First Request"), which was dated May 15, 2015.  *See* **Ex. 2**.  Those listed 21 separate requests for documents.  Defendant produced a total of only four (4) documents to plaintiffs.  Defendant responded that every one of plaintiffs' requests either sought "irrelevant and non-discoverable information" and/or was "vague" or "overbroad."  *See* **Ex. 3**.  Today, defendant produced additional documents in response to two of plaintiffs' requests.  Because the government lacks a legitimate basis to withhold the remaining requested information, plaintiffs also respectfully ask that the Court grant their motion to compel the production of documents.

The parties met and conferred on these issues by telephone and in writing on multiple occasions.  Plaintiffs revised the list of deposition topics, per defendant's request, as recently as March 16, 2016, in an attempt to reach a compromise.

## 2.  The IRS's *Touhy* Regulations cannot be used to gain an unfair advantage

The government argues that the testimony of Agent Scott is subject to limitations imposed by Treas. Reg. §§ 301.9000-1 to -7, known as the IRS's *Touhy* Regulations, after the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  The government contends that the *Touhy* regulations require IRS employees to obtain a specific

---

[1] *See also United States v. Reynolds*, 345 U.S. 1, 9–10 (1953) ("When the United States is a party to litigation, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.").

testimonial authorization from the IRS before testifying in any matter.  The government is

incorrect both as to the applicability of *Touhy* to this litigation and the requirements of *Touhy*

regulations it cites.

   Judge Block of this Court has admirably set out the historical background to *Touhy* and

*Touhy* regulations:

>   The history of disclosure-limiting "*Touhy*" regulations . . . traces back more than two
>   centuries.  In 1789, "housekeeping" statutes were enacted "to help General Washington
>   get his administration underway by spelling out the authority for executive officials to set
>   up offices and file government documents."  H.R.Rep. No. 85-1461 (1958), *as reprinted
>   in* 1958 U.S.C.C.A.N. 3352, 3352.  Thereafter, unfortunately, executive officials, it was
>   perceived, sought to extend the reach of these statutes and their regulatory progeny, using
>   them as a "convenient blanket to hide anything Congress may have neglected or refused
>   to include under specific secrecy laws."  *Id.* at 3352-53.  One such attempt was at issue in
>   [*Touhy*].
>
>   In *Touhy*, the Supreme Court held that the trial court could not adjudge in contempt an
>   executive department subordinate for refusing to comply with a subpoena *duces tecum*,
>   because the department head had withdrawn from the subordinate all discretion in the
>   matter, [*Touhy*, 340 U.S.] at 467-68, a power the Court sanctioned, *id.* at 467.  Indeed, in
>   the wake of *Touhy*, disclosure-limiting regulations proliferated, and thereafter were
>   ascribed the ostensibly validating label of "*Touhy* regulations," as agencies continued to
>   invoke them as authority for refusing the court-ordered production of documents.  26A
>   Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure:
>   Evidence* § 5682.

*Resource Investments, Inc. v. United States*, 93 Fed.Cl. 373, 379-80 (Fed. Cl. 2010); *see also*

*Gulf Group General Enterprises Co. v. United States*, 98 Fed. Cl. 639, 646 (Fed. Cl. 2011) (J.

Horn) (providing additional background on *Touhy* regulations, and invalidating provisions of the

Department of the Army's *Touhy* regulations that conflicted with "the authority of the judicial

branch to control the admission of testimony for cases filed in federal court").

   These attempts to widen the scope of *Touhy* were contrary to *Touhy* itself, however,

which expressly declined to reach the question of whether the head of an executive agency could

refuse "to produce at a court's order the government papers in his position. *Touhy*, 340 U.S. at 467. Addressing this question shortly after *Touhy*, the Supreme Court held that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953). Congress too addressed the issue, amending the federal "housekeeping" statute, codified at 5 U.S.C. § 301, to make clear that it "does not authorize withholding information from the public or limiting the availability of records to the public." *See Resource Investments, Inc.*, 93 Fed.Cl. at 380; *see also Gulf Group General Enterprises Co.*, 98 Fed. Cl. at 644 ("Although the statute at 5 U.S.C. § 301 contains no explicit language authorizing an agency to withhold documents or testimony from the legal process, the Department of the Army appears to have crafted their regulations to that end.").

Correctly construed, *Touhy* only provides that "a subordinate government official will not be compelled to testify or to produce documents in private litigation, in which the federal government or any of its agencies is *not a party* in cases where a departmental regulation prohibits disclosure in the absence of consent by the head of the department." *Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998). Indeed, the courts are nearly unanimous that "when the United States *is a party* to the litigation, the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors." *Resource Investments, Inc.*, 93 Fed. Cl. at 380 (emphasis added). In other words, *Touhy* is simply inapplicable in cases where the government is a party. *See, e.g., Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) (explaining that *Touhy* applies "[w]hen a litigant seeks to obtain documents from a non-party federal governmental agency . . . ." (quoting *Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996)); *State of La. v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) ("As the Supreme Court has long held, such regulations unquestionably give Justice Department employees the

4

authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of confidential files *when the United States is not a party to the legal action*." (emphasis added)); *Galarza v. Szalczyk*, No. 10-6815, 2011 WL 1045119, *3 (E.D. Pa. March 21, 2011) ("Federal courts have recognized that neither the Housekeeping Statute nor *Touhy* authorize a federal agency to withhold documents or testimony from a federal court in litigation in which the United States is a party."); *Alexander*, 186 F.R.D. at 70 ("The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding.").

In a recent tax refund suit, the government argued (as it does here) that *Touhy* and the accompanying Treasury Regulations "preclude the disclosure of information by current or former Treasury Department employees without prior approval of the Commissioner of Internal Revenue of the appropriate delegate." *NetJets Large Aircraft, Inc. v. United States*, 114 A.F.T.R.2d 5173, 2014 WL 3459645, at *6 (S.D. Ohio July 11, 2014) (quoting the government's brief). Citing the principle that *Touhy* is inapplicable in cases where the government is a party, the court summarily disposed of the government's argument. *Id. NetJets* provides the appropriate response to defendant's efforts to obstruct Agent Scott's deposition here.

Based on the authorities cited above, it is clear that the government is misguided in invoking *Touhy* and the IRS's *Touhy* Regulations to set the terms of, or to entirely prohibit, Agent Scott's testimony in this litigation. Because the government is a party to the litigation, *Touhy* is inapplicable, and the IRS's *Touhy* Regulations cannot be used to dictate the conduct of discovery. *See Dixon v. Shinseki*, 741 F.3d 1367, 1372, fn.1 (Fed. Cir. 2014) (ruling "the VA's Touhy regulations are inapplicable where, as here, the VA 'is a party' to the proceedings."); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) ("The Government as a

litigant is, of course, subject to the rules of discovery."). The Court may compel Agent Scott to give deposition testimony without regard to the *Touhy* regulations the government cites.

Moreover, to the extent that the IRS's *Touhy* regulations seek to insulate the government from its discovery obligations, they are contrary to 5 U.S.C. § 501 and the weight of *Touhy* jurisprudence. *See Resource Investments, Inc.*, 93 Fed. Cl. at 379 ("[T]he Federal Rules and the Rules of the Court—and the needs of the court, generally—supersede any agency regulation in conflict therewith."); *id.* at 381 (Purported *Touhy* regulations, "which are clearly in conflict with the court's authority as set forth in the Federal Rules of Evidence and the Rules of the Court, can have no force or effect."); *Gulf Group General Enterprises Co.*, 98 Fed. Cl. 639, 647 (rejecting notion that *Touhy* regulations can be used to bar testimony, and observing that, "[m]indful of the separation of powers, the judiciary, not the executive branch controls the admission of evidence at trial.").

Judge Horn of the Court of Federal Claims similarly has made clear that the courts should not acquiesce where an agency's *Touhy* regulations "are in direct conflict with the authority of the judicial branch to control the admission of testimony for cases filed in federal court in order to achieve a just and fair result." *Gulf Group General Enterprises Co. WLL v. United States*, 98 Fed.Cl. 639, 646 (Fed. Cl. 2011); *see also id.* at 647 ("Mindful of the separation of powers, the judiciary, not the executive branch controls the admission of evidence at trial."). Other courts have agreed with Judge Horn that the position the government takes here invents a new privilege—unsupported by law—at the expense of fairness. *See, e.g., Romero v. United States*, 153 F.R.D. 649, 652 (D.Colo. 1994) ("[I]t simply makes no sense that [the government] would be allowed to determine whom the other side may endorse as a witness . . . [T]he Government cannot use this regulation to gain an unfair advantage in precluding the best evidence from being

presented to this Court at trial."); *McElya v. Sterling Medical, Inc.*, 129 F.R.D. 510, 514 (W.D. Tenn. 1990) ("The Department of the Navy by its regulations at issue here is, in effect, attempting to assert a privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence, that is, a privilege of the Secretary of the Navy to decide what, how, and when evidence is made available to an adverse litigant or a court[.]").  Such abuse of the Federal Rules of Civil Procedure has been rejected in this Court by Judges Block and Horn.[2]

Alternatively, even if the Court were to decide that *Touhy* applies in cases in which the government is a party and that *Touhy* regulations can be used to bar testimony, the IRS's *Touhy* regulations only state that "[a] request or demand for IRS records or information *for use in a non-IRS matter* shall be accompanied by a written statement made by or on behalf of the party seeking the testimony or disclosure of IRS records or information . . ."  Treas. Reg. § 301.9000-5(a) (emphasis added).  A suit over tax liability is decidedly an "IRS matter," as made clear in the IRS's *Touhy* regulations. *See* Treas. Reg. § 301.9000-6, Example (6) (explaining that when the U.S. DOJ represents the IRS in a refund suit, "[t]his is an IRS matter.").  Thus, because this is, by express terms of the Regulations, "an IRS matter," the written statement requirement of Treas. Reg. § 301.9000-5 does not apply.

The government also asserts that a "testimony authorization" is required under the IRS's *Touhy* Regulations for Agent Scott to give a deposition.  As those Regulations make clear, however, the testimony authorization process is entirely *internal* to the IRS, setting out what IRS employees must do before testifying or disclosing IRS records or information.  *See* Treas. Reg. § 301.9000-3(a).  Those regulations impose no requirements or hurdles *upon a party* seeking to compel the testimony of an IRS employee.  For that reason, the government's contention that

---

[2] *Dixon v. Shinseki*, 741 F.3d 1367, 1372, fn.1 (Fed. Cir. 2014).

plaintiffs must somehow participate in the testimony authorization process by supplying lists of deposition topics in advance and culling topics which the government disagrees with is simply wrong.  Furthermore, the government's stated practice is antithetical to the federal discovery rules and constitutes an impermissible intrusion into the core protections afforded by the work product doctrine, which shields from disclosure and holds as "inviolate" an attorney's thoughts, mental impressions, and trial strategies. *Hickman v. Taylor*, 329 U.S. 495 (1947); *see also id*., at 516 (J. Jackson, *concurring*) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.")  The government's unilateral imposition of a deposition-topic-list requirement vis-à-vis a testimony authorization poses an impermissible hurdle to federal discovery and seeks to enable it to function on borrowed wits.  That was never contemplated by *Touhy*, was soundly rejected by Congress,[3] and because of its fundamental unfairness, should not be countenanced.

### 3. *De novo* review does not bar the discovery of relevant evidence

In addition to the IRS's *Touhy* Regulations, defendant has repeatedly cited *Vons Companies v. United States* and similar cases for the broad and unremarkable proposition that federal courts decide federal tax cases *de novo*.  51 Fed. Cl. 1 (Fed. Cl. 2001) (J. Allegra).  That simply means that federal courts are not bound by determinations made by the IRS, and that as a consequence, the internal views and opinions held by IRS employees—whether favorable or unfavorable to the taxpayer—ordinarily have no bearing on subsequent litigation.  *Id*.  It does not mean, however, that the facts obtained and developed by the IRS are irrelevant or are non-discoverable.  *See e.g*., *Cook v. United States*, 46 Fed. Cl. 110, 120 (Fed. Cl. 2000) (J. Allegra) (acknowledging *de novo* standard of review, but suggesting that the IRS's Administrative File is

---

[3] *See* 5 U.S.C. § 301; *Resource Investments, Inc*., 93 Fed. Cl. at 380 (the amendment to 5 U.S.C. § 301 makes clear that it "does not authorize withholding information from the public or limiting the availability of records to the public.").

generally subject to discovery on relevancy grounds; admonishing the IRS for its inability to locate the taxpayer's Administrative File, and stating "this court believes that the Service has a particular responsibility to ensure that files needed for litigation are preserved and timely made available to the Justice Department and, upon proper discovery request, to plaintiffs."); *NetJets Large Aircraft, Inc. v. United States*, 114 A.F.T.R.2d 5173, 2014 WL 3459645, at \*6 (S.D. Ohio July 11, 2014).  Nor does it mean, for instance, that when the IRS has committed an error that calls into question the validity of its assessment that a taxpayer is precluded from inquiring into that error or the validity of that assessment.  *See, e.g., United States v. Janis*, 428 U.S. 433, 440 (1976) ("proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous"); *Cook*, 46 Fed. Cl. at 114; *see also Hudspeth v. Commissioner*, 914 F.2d 1207, 1214 (9th Cir. 1990) (evidence of the IRS's valuation was relevant where petitioners challenged the accuracy of the deficiency notice).  Thus the notion that no inquiry can ever be made into IRS proceedings, enabling the government to shield from discovery relevant facts and evidence held by the IRS, is a fallacy.  *Id*. s*ee also*, *The De Novo Doctrine: Irrelevant to Relevancy in Civil Tax Litigation*, 14 Fla. Tax Rev. 115 (2013) (examining origin, evolution and proper application of the *de novo* standard).

Consequently, federal courts permit the deposition of IRS agents when those agents are in possession of relevant evidence.  *See e.g.*, *United States v. Rohner*, 116 A.F.T.R.2d (RIA) 7005 (6th Cir. 2015) (affirming ruling that deposition of IRS Revenue Officer was properly limited to relevant evidence, and stating that "[i]n the context of a civil collection proceeding, the documents the IRS relies on in assessing unpaid tax to an individual generally fall within the scope of discoverable materials under Rule 26(b)(1) because they are relevant to the assessments' validity."); *Big Ernie's Inc. v. United States*, 104 A.F.T.R.2d (RIA) 2009-6218 \*5-6

9

(E.D. Va. 2009) (Taxpayer who sought information from the IRS "that is potentially relevant to the reasonableness of Plaintiff's activities and information regarding the IRS's computations" was "entitled to depose the [IRS] Settlement Officer to discover information that is relevant to a party's claim or defense, to the extent that it is nonprivileged, insofar as Plaintiff does not seek the Settlement Officers conclusions or opinions"); *D'Angelo v. United States*, 2009-1 U.S. Tax. Cas. (CCH) P 50,273, 103 A.F.T.R.2d (RIA) 2009-1296 (S.D. Fla. 2009) (denying government motion *in limine* to preclude the taxpayer from calling IRS witnesses at trial); *United States v. Cathcart*, 103 A.F.T.R.2d (RIA) 1036 (N.D. Cal. 2009) (allowing deposition of IRS agent who conducted the audit of the taxpayer).

Courts also routinely allow for the discovery of facts developed by the IRS. *See Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (Fed. Cl. 2005) (holding "Plaintiffs' Administrative Files containing the materials considered by the IRS in formulating the FPAA are relevant because they contain the underpinnings for the imposition of tax liability and penalties."); *Cook v. United States*, 46 Fed. Cl. at 120; *see also*, *United States v. Rohner*, 116 A.F.T.R.2d (RIA) 7005 (6th Cir. 2015) (explaining that "in the context of a civil collection proceeding, the documents the IRS relies on in assessing unpaid tax to an individual generally fall within the scope of discoverable materials under Rule 26(b)(1) because they are relevant to the assessments' validity. We are deeply troubled that the Government may have decided not to produce these documents to [the taxpayer] in the course of discovery.") (internal citations omitted); *NetJets Large Aircraft, Inc. v. United States*, 114 A.F.T.R.2d 5173, 2014 WL 3459645, at *6 (S.D. Ohio July 11, 2014); *Hudspeth v. Commissioner*, 914 F.2d 1207, 1214 (9th Cir. 1990); *Nevada Partners Fund, LLC v. United States*, No. 06-379, 2008 U.S. Dist. LEXIS 47853, 2008 WL 2484198, at *18 (S.D. Miss. May 12, 2008) (holding that where the government

"produced over forty-thousand pages of documents, including Plaintiff's audit file, the source documents relied on in drafting the FPAAs, a 19-page write-up prepared by the Government after the audit outlining its factual position, and all Plaintiff's records it reviewed," the "information produced clearly allows Plaintiff to evaluate the basis for the Government's position and analysis of the transactions at issue and enables it to challenge or rebut the Government's position."); *Beresford v. United States*, 123 F.R.D. 232, 235 (E.D. Mich. 1988) (ruling that "information relied upon by the government in making its valuation is directly relevant to plaintiff's ability to challenge that valuation in this proceeding" and thus was admissible); *Simons-Eastern Co. v. United States*, 55 F.R.D. 88 (N.D. Ga. 1972) (ruling, after reviewing the IRS's administrative file, that "there should be disclosure in favor of the taxpayer of all computations and facts revealed objectively in the file but not of any conclusions or opinions reached by various agents of the Internal Revenue Service."); *Timken Roller Bearing Co. v. United States*, 38 F.R.D. 57, 63 (N.D. Ohio 1964) (concluding documents, memoranda and reports of IRS agents were "reasonably calculated to lead to the discovery of admissible evidence" and would shed light on the government's defense;  also observing that the government's theory of defense "should not be kept secret until the moment of trial.").

As detailed below, plaintiffs do not seek the views or opinions of IRS employees. Rather, they simply wish to discover the facts obtained and developed by the government which may be used at trial, to inquire about the exclusion of Mrs. Gerowin Herrmann from the audit of Paulson Europe LLP, and to inquire about the apparent error committed by the IRS in its Notice of Computational Adjustment.

### 4. Deposition of Agent Scott

Under RCFC 37(a)(1), a party can move for an order compelling discovery if another other party fails to produce a witness for deposition. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." RCFC 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[4] *Id.*

Plaintiffs seek to depose Agent Scott on the following five topics:[5]

(1) The IRS's exclusion of Mina Gerowin Herrmann from the audit of Paulson Europe LLP, evidence supporting any initial determination by the IRS that Mina Gerowin Herrmann was not a partner in Paulson Europe LLP or not eligible to participate in the audit of Paulson Europe LLP, evidence on which the IRS relied in concluding that Mina Gerowin Herrmann was a partner in Paulson Europe LLP, and IRS procedures followed during the Paulson Europe LLP audit.

(2) The facts and issues examined by the IRS during the IRS's individual audit of the Herrmanns.

(3) The IRS's issuance of a Notice of Computational Adjustment, the error in the Notice of Computational Adjustment, the fact that the IRS did not revise the Notice of Computational Adjustment, and the fact that the IRS did not apply foreign tax credits to the asserted tax liability of the Herrmanns.

(4) The evidence, if any, considered by the IRS in determining whether Paulson Europe LLP timely filed a 2008 Schedule K-1 for Mina Gerowin Herrmann in 2009.

(5) The declaration filed by Agent Scott in the litigation.

---

[4] Under the newly revised Federal Rules of Civil Procedure, the discovery sought must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The new discovery rules are still broader than the standard for admissibility of evidence at trial, since "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

[5] This reflects the most recent list of deposition topics as revised on both March 15, 2016, and again on March 16, 2016, per defendant's requests.

Topic one:  Defendant initially agreed to let Agent Scott testify about the portion of topic one that concerned the IRS's exclusion of Mina Gerowin Herrmann from the audit of Paulson Europe LLP.  Defendant would only consent to that, however, if plaintiffs would agree to forgo a deposition of all the remaining topics.  Defendant further refused to allow Agent Scott to testify regarding the remainder of topic one, which concerns facts directly related to Mrs. Gerowin Herrmann's exclusion.

Yesterday, defendant provided plaintiffs with its own "final" list of deposition topics.  *See* **Ex**. **1**.  Defendant's list of topics is not only confusing, it contains so many qualifications and limitations that it would make Agent Scott's deposition a procedural nightmare.  For instance, defendant's topic one says that plaintiffs can ask only about the "existence of an IRS examination of Paulson Europe, LLP's 2008 taxable year," topic two says that plaintiffs can only ask about "facts" concerning Mrs. Gerowin Herrmann's "status as a notice partner," and topic three says plaintiffs can only ask about Mrs. Gerowin Herrmann's or her agent's "participation as a notice partner" in "the IRS's examination of Paulson Europe, LLP."  Thus, defendant no longer appears willing to let Agent Scott broadly testify about the portion of topic one concerning the IRS's exclusion of Mrs. Gerowin Herrmann, but instead wishes to narrowly constrain any testimony on the issue.  This is a blatant attempt by defendant to circumvent the discovery rules of the Court of Federal Claims and this Court's denial of defendant's motion to strike Count Four.

All of topic one *as drafted by plaintiffs* is relevant to Count Four of the Complaint, in which plaintiffs allege that the IRS excluded Mrs. Gerowin Herrmann from the audit of Paulson Europe LLP in violation of her statutory rights.  Defendant moved to dismiss Count Four and this Court denied defendant's motion.  Accordingly, Count Four is squarely at issue in this

13

litigation and plaintiffs are entitled to broad discovery with respect to it.  Moreover, the entirety

of Count Four concerns actions taken by the IRS.  So the source of discovery for Count Four

necessarily is the IRS and its employees who excluded Mrs. Gerowin Herrmann from the audit.

Plaintiffs have an undeniable right to obtain discovery relevant to Count Four, as defendant

appears to recognize at least in part.  But that discovery also includes the reason why the IRS

excluded Mrs. Gerowin Herrmann and any underlying facts concerning the exclusion.

Defendant, of course, may not by ultimatum or otherwise limit plaintiffs' right to obtain

information about these discoverable issues.

Topic two:  The facts and issues examined by the IRS during its individual audit of the

Herrmanns—as identified in plaintiffs' topic two—are directly relevant to Count One of the

Complaint.  Plaintiffs have alleged in Count One that the bulk of the IRS's assessment in this

case resulted from a significant error contained in the IRS's notice of computational adjustment

(the "Notice").  The error alone resulted in an overstatement, by approximately $5,200,000

dollars, of the putative tax deficiency.  Plaintiffs maintain that there are no factual or legal issues

in dispute with respect to Count One (aside from the precise calculation of the refund, which the

Court has already ruled will occur at the conclusion of the litigation).  Defendant claims that

there *are* factual and legal issues in dispute with respect to Count One.  But apart from one issue

totaling less than $30,000 that defendant claims impacts the approximate $5,200,0000 refund

claim under Count One, defendant has identified no other disputed issues of fact or law.  (Def.

Opp to Pl's Mot for P. Sum. J. (Doc. 24 at 7).  As a matter of fundamental fairness, Plaintiffs are

entitled to discover whether any facts support the government's assertions with respect to Count

One.  The IRS audited plaintiffs.  The IRS invariably obtained information on its own and from

third parties during that audit, such as from Paulson Europe LLP and Paulson & Co. Inc., Mrs.

Gerowin Herrmann's former employer.  The federal courts do not permit trial by ambush.

Consequently, plaintiffs have a right to inquire into any evidence relevant to Count One that the

government may have developed during the audit and could use at trial.  Defendant's final list

suggested allowing Agent Scott to testify only regarding the "identification of the two issues . . .

examined by the IRS during the IRS's audit of the Herrmanns' joint tax liability." **Ex. 1**, topic 4.

But plaintiffs rightfully are entitled to inquire about all of topic two as drafted by plaintiffs, not

defendant.

   Topic Three:  As noted above, plaintiffs have alleged in Count One that the bulk of the

IRS's assessment in this case resulted from a significant error contained in the IRS's Notice, and

that the error resulted in an overstatement of plaintiffs' liability by approximately $5,200,000.

Defendant claims that there are factual and legal issues in dispute with respect to Count One, but

so far has not identified any facts or issues that are actually in dispute, apart from a *de minimis*

adjustment.  Defendant has even denied that the Notice contains an error (*see* **Ex. 4** at App. 040,

Def.'s Res. to Pls.' Req. for Adm.), although it has identified no factual or legal basis for that

denial.  Topic three (like topic two) seeks to discover whether any facts support the

government's assertions with respect to Count One that the government may have developed

during the audit and could use at trial.  It also seeks to identify any facts that might support

defendant's denial that the IRS's Notice contains an error, any facts supporting the IRS's refusal

to revise the Notice of Computational Adjustment when the error was brought to the IRS's

attention, and any facts underpinning the IRS's refusal to apply foreign tax credits to the asserted

tax liability of the Herrmanns.  Defendant's final list says plaintiffs may ask Agent Scott only

about "[p]artnership items used in the calculation of the amount due contained in the Notice of

Computational Adjustment."  **Ex. 1**, topic 5.  That suggests, for example, that plaintiffs cannot

ask Agent Scott about the failure of the IRS to correct its erroneous denial of the plaintiffs' right to a proper foreign tax credit in calculating the amount of additional tax asserted in the Notice. Once again, plaintiffs rightfully are entitled to inquire about all of topic three as drafted by plaintiffs, not defendant.

Topic four:  The government contends (wrongly) in this litigation that PELLP timely issued Mina Gerowin Herrmann a 2008 Schedule K-1 in 2009.  In an effort to cast plaintiffs in an unfavorable light before this court, defendant has repeatedly suggested (again wrongly) that plaintiffs deliberately ignored a timely issued 2008 Schedule K-1 when preparing their U.S. tax returns.  *See e.g.*, October 7, 2015, Hear. Trans. at 4:25 – 5:4 (MR. LUCEY:  "This case involves the Herrmanns' unreported over $18 million of income for tax year 2008." THE COURT: "Why do you say it's unreported?" MR. LUCEY: "Because the Herrmanns never reported that on their 2008 original tax return. And –"); *id.* at 78:6 – 14 (THE COURT:  "The IRS knew about the mistake. Why has it hung on to that amount of money?"  MR. LUCEY:  "You're saying -- you're talking about the increased foreign-sourced income?"  THE COURT:  "Yes."  MR. LUCEY: "And the amount of income left off was 18 million, so you're talking about –"  THE COURT: "You keep doing that.  Let's put that aside.  We all agree to that.").  Plaintiffs assert that Paulson Europe LLP failed to provide Mrs. Gerowin Herrmann with a 2008 Schedule K-1, and that it even failed to file a Schedule K-1 for Mrs. Gerowin Herrmann with the IRS.  Documents in the record indicate that the IRS investigated whether Paulson Europe LLP timely filed a 2008 Schedule K-1 or provided one to plaintiffs.  Plaintiffs are entitled to discover what, if any, evidence supposedly supports defendant's contentions that a timely Schedule K-1 was provided to plaintiffs or filed with the IRS, and to refute the government's repeated and untrue insinuations.  Defendant has offered in its final list merely to stipulate that the only Schedule K-1

16

for Mrs. Gerowin Herrmann reviewed by Agent Scott was received from Paulson Europe LLP in

2011.  That unrequited offer does not go to the issues, raised by plaintiffs, of whether the IRS

timely received a Schedule K-1 for Mrs. Gerowin Herrmann along with the 2008 federal tax

return of Paulson Europe LLP, or of whether the IRS reviewed any other evidence that would

tend to suggest that Paulson Europe LLP filed or failed to file a timely Schedule K-1 for Mrs.

Gerowin Herrmann.  Nor does it allow for any follow up with Agent Scott.

Finally, topic five pertains to Agent Scott's declaration, which he made under oath and

which defendant filed in this litigation.  Defendant's final list says plaintiffs can only ask Agent

Scott about "paragraphs 1, 2, 9 and 10 of the declaration filed by Mr. Scott in the litigation."  **Ex.

1**, topic 6.  Surely plaintiffs may question a witness about the entirety of a sworn statement he

made to *this very Court* in *this very case*.  That the government would contend otherwise defies

belief.

Even if Agent Scott's declaration had not been filed under oath with this Court in this

case, all of it—not just paragraphs 1, 2, 9 and 10—raises issues of credibility and bias.  Plaintiffs,

for instance, doubt the credibility of certain statements Agent Scott made that are reflected in

paragraphs other than 1, 2, 9 and 10, based on evidence in the record.  Plaintiffs have a right to

question Agent Scott about those statements in discovery.  *See e.g*., October 7, 2015, Hear.

Trans. at 49:16 –50:25.  Questions as to bias and credibility are almost always *admissible* at trial,

and thus certainly constitute the proper subject of a discovery deposition where relevance is more

liberally construed.  *See e.g. United States v. Abel*, 469 U.S. 45 (1984) ("Bias may be induced by

a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost

always relevant because the jury, as finder of fact and weigher of credibility has historically been

entitled to assess all evidence which might bear on the accuracy and truth of a witness'

17

testimony.")**;** 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 (3d ed. 2010) ("[i]nformation showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action."); *see also Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001) ("Inquiries concerning a witnesses' credibility are relevant and thus reasonably calculated to lead to the discovery of admissible evidence, even if the information sought is not directly related to the subject of the underlying litigation.").

Accordingly, plaintiffs respectfully request that the Court compel the deposition of Agent Scott on all of the topics discussed above.

### 5. First Request for the Production of Documents

Plaintiffs served defendant with a "First Request" to produce documents on May 15, 2015.  The First Request sought discovery of documents described in requests numbered 1 through  21.  On June 22, 2015, defendant responded producing a total of 4 documents with respect to requests 3, 4, 10, and 16.  Defendant further responded that "upon information and belief, no such documents exist" with respect to requests 2, 9, 17, 18, and 19.  Plaintiffs presume that defendant conducted a good faith search in making its determination that no documents exist with respect to these five requests and thus plaintiffs do not seek to enforce them.  Today, defendant produced all discoverable documents responsive to request 15, and a partial response to request 8.  Plaintiffs now move to enforce the production of the following requests, which are described in greater detail below:  Requests 1, 5, 6, 8, 11, 13, and 14.[6]

Documents responsive to these seven requests should be located in the IRS's Administrative File for plaintiffs.  As discussed above, the Court of Federal Claims (like other courts) has previously ruled that the IRS's Administrative File is relevant and discoverable in tax refund litigation.  *See Jade Trading* , 65 Fed. Cl. 487 (holding "Plaintiffs' Administrative Files

---

[6] Plaintiffs do not seek to compel responses to requests 7, 12, 20 and 21.

containing the materials considered by the IRS in formulating the FPAA are relevant because they contain the underpinnings for the imposition of tax liability and penalties."); *Cook*, 46 Fed. Cl. at 118, 120 (suggesting that the IRS's Administrative File is generally subject to discovery on relevancy grounds, and ordering production of documents from the IRS's "administrative file for this case").

> **Request 1:**    All documents reviewed, considered, used, or relied upon in preparation of the IRS's Notice of Computational Adjustment for Plaintiffs' tax year 2008.

> **Request 5:**    All documents concerning whether to reissue, correct, or amend the IRS's Notice of Computational Adjustment because of the second 2008 PELLP Form K-1.

Requests 1 and 5 seek production of documents relevant to establishing Count One of the Complaint.  Count One alleges that defendant issued an erroneous Notice and failed to correct that Notice causing the Plaintiffs to pay overstated tax and interest.  The documents requested are relevant to establishing that the computation was in fact erroneous, and that the IRS knew of the error and failed to correct it.  The IRS has conceded that the Notice was erroneous in administrative proceedings, however, defendant now contends that there was no error and that the facts related to Count One remain in dispute.  (*See* **Ex. 4** at App. 040, Def.'s Res. to Pls.' Req. for Adm.)  The defendant has not identified what facts remain in dispute.  Plaintiffs are entitled to discover whether any facts support defendant's assertions with respect to Count One. The IRS audited the plaintiffs and issued the Notice in April of 2012.  Prior to the close of the audit of Paulson Europe LLP, the IRS was given a corrected 2008 Paulson Europe LLP K-1 for Mrs. Gerowin Herrmann.  The IRS refused to issue a corrected Notice in light of the corrected 2008 Paulson Europe LLP K-1.  The government has failed to produce documents relevant to the issuance of the Notice and the refusal to reissue a corrected Notice.  Plaintiffs are entitled to those documents and facts in advance of trial.

**Request 6:**     All documents reviewed, considered, or relating to the amount of tax that the Herrmanns should owe based on the second PELLP form K-1, including but not limited to computations, calculations, . . . and workpapers.[7]

Request 6 seeks documents relevant to establishing Count One of the Complaint.  Count One alleges that the IRS's computation was erroneous and that the IRS admitted that the amount of tax and interest was overstated.  As stated above, the defendant denies that the IRS's computation was erroneous and takes the position that issues of fact remain with respect to Count One without describing what those facts are.   The plaintiffs are entitled to discover the facts relevant to the government's position.  The documents requested are relevant in establishing whether the IRS was aware that the second Paulson Europe LLP Form K-1 would have an impact on the amount of tax and interest owed, whether efforts were made to determine the correct liability, and whether the IRS recognized that the Notice was overstated.  The plaintiffs are entitled to the facts surrounding the IRS's treatment of the second PELLP form K-1 in advance of trial.

**Request 8:**     All documents, if any, indicating that PELLP filed a 2008 Form K-1 for Mrs. Herrmann with the IRS in 2009 including, but not limited to, IRS Service Center records, IRS transcripts, and IRS matching program records.

Request 8 seeks documents relevant to establishing Count Four of the Complaint.  Count Four alleges that the assessment contravenes IRC section 6225, section 6230(a)(2), and other related provisions in part because Mrs. Gerowin Herrmann received no K-1 for 2008 (until receiving a grossly erroneous 2008 K-1 in August 2011 during the Paulson Europe LLP audit) and could not have intended to report her 2008 income in a manner that was inconsistent with Paulson Europe LLP.  Documents in the record indicate that the IRS investigated whether

---

[7] As originally filed, Request 6 also sought the IRS's analyses with respect to the second PELLP form K-1.  Reference to "analyses" has been omitted from Request 6 in this Motion as plaintiffs do not seek analyses or any other documents that could be construed as the IRS's opinion as to the applicable law.

Paulson Europe LLP timely filed a 2008 Schedule K-1 or provided one to Plaintiffs.  Plaintiffs

are entitled to discover what, if any, evidence supposedly supports defendant's contentions that a

timely Schedule K-1 was provided to plaintiffs or filed with the IRS, and to refute the

governments repeated and untrue insinuations.  The documents requested would establish that

Mrs. Gerowin Herrmann in fact did not receive a Paulson Europe LLP K-1 for 2008 in 2009.  On

December 29, 2015, defendant provided background information to plaintiffs regarding the tax

and information return submission procedures and processing system used by the IRS.  Today,

defendant produced documents in partial response to this request.  Also today, counsel for

plaintiffs and defendant discussed a potential resolution of the remainder of this request, but as of

the filing of this motion, the request remains outstanding.

> **Request 11:**     All documents identifying all return preparers, advisors, representatives, employees, partners, or members of Paulson & Co. or Paulson Europe who stated that Paulson Europe's partnership return for the 2008 tax year filed with the IRS included all K-1's for all of the U.S. partners/members, including but not limited to witness interview notes or memoranda.

Request 11 seeks documents relevant to establishing Count Four of the Complaint.

Count Four alleges that the assessment contravenes IRC section 6225, section 6230(a)(2), and

other related provisions in part because Mrs. Gerowin Herrmann  received no K-1 for 2008 (until

receiving a grossly erroneous 2008 K-1 in August 2011 during the Paulson Europe LLP audit)

and could not have intended to report her 2008 income in a manner that was inconsistent with

Paulson Europe LLP.   Plaintiffs are entitled to discover what, if any, evidence supposedly

supports defendant's contentions that a timely Schedule K-1 was provided to plaintiffs or filed

with the IRS, and to refute the governments repeated and untrue insinuations.  Whether the

Paulson Europe LLP K-1s for all U.S. partners/members were filed with the Paulson Europe LLP

2008 return is probative as to whether Mrs. Gerowin Herrmann received a Paulson Europe LLP

K-1 for 2008 in 2009.   Further, Plaintiffs are entitled to know what third party contacts were

made by the IRS during the audit of Plaintiffs to ascertain such information.

> **Request 13** :   All Documents relating to the TEFRA audit of Paulson Europe and the
> number of meetings and telephone calls IRS personnel had with persons at Paulson &
> Co., persons at Paulson Europe, or lawyers, accountants, tax preparers, advisors, or other
> representatives for either company.

> **Request 14**:    All documents relating to or reflecting communications with persons at
> Paulson & Co., persons at Paulson Europe, or lawyers, accountants, tax preparers,
> advisors, or other representatives for either company, in connection with the TEFRA
> audit of Paulson Europe.

Requests 13 and 14 seek documents relevant to establishing Count Four of the

Complaint.  Count Four alleges that Mrs. Gerowin Herrmann was denied meaningful

participation in the audit.  The defendant disputes that contention without providing any contrary

evidence other than the mere fact that a Notice of Beginning of Administrative Proceeding was

sent to Mrs. Gerowin Herrmann.  (*See* Notice of Beginning of Administrative Proceeding

attached to **Ex. 3**, Def's Res. to Pls.' Req. for Prod.)  The plaintiffs are entitled to discover facts

that might support the defendant's position that Mrs. Gerowin Herrmann was not denied

meaningful participation in the audit.  The documents requested are probative with respect to

Count Four insofar they would establish Mrs. Gerowin Herrmann's presence and participation

or, more accurately, absence and lack of participation during the audit of Paulson Europe LLP.

Plaintiffs respectfully request that the Court compel the production of the documents that

are responsive to the document requests discussed above.

**CONCLUSION**

Plaintiffs have met and conferred with Defendant by telephone and through correspondence on multiple occasions. For the reasons stated above, Plaintiffs request that this Motion to Compel be granted in its entirety.

Respectfully Submitted,

/s/ Nathan E. Clukey
Nathan E. Clukey
  *Attorney of Record*
Abraham N.M. Shashy, Jr.
  *Of Counsel*
Ariana Wallizada
  *Of Counsel*
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
nclukey@kslaw.com
hshashy@kslaw.com
awallizada@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

DATED:  March 22, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2016, I electronically filed a copy of the foregoing motion to compel the deposition of IRS Revenue Agent Joseph Scott ("Agent Scott") and for the production of documents with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Nathan E. Clukey

Nathan E. Clukey
